## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **STARR INDEMNITY & LIABILITY COMPANY,**<br>   **399 Park Avenue, 2nd Floor,**<br>   **New York, NY 10022**<br><br>                     **Plaintiff,**<br><br>**v.**<br><br>**DANIEL ROSS;**<br>   **4913 Mussetter Road,**<br>   **Ijamsville, Maryland 21754**<br>   **Frederick County**<br><br>**ROSS CONTRACTING, INC.;**<br>   **1007 Rising Ridge Road**<br>   **Mount Airy, Maryland 21771**<br>   **Frederick County**<br><br>**and PENN SHOP FARMS, LLC;**<br>   **1007 Rising Ridge Road**<br>   **Mounty Airy, Maryland 21771**<br>   **Frederick County**<br><br>                     **Defendants.** | **Case No.:**<br><br>**Judge:** |

## COMPLAINT FOR DECLARATORY RELIEF

1.     Starr Indemnity & Liability Company seeks declaratory relief regarding its obligations in connection with certain underlying litigation, which it has been and is defending under reservation of rights.

## Parties

2.      Starr Indemnity & Liability Company is incorporated in New York and has its principal place of business in New York.

3.      Daniel Ross is a citizen of Maryland.

4.      Ross Contracting, Inc. is a Maryland corporation with its principal place of business in Maryland.

5.      Penn Shop Farms, LLC is a Maryland limited liability company.  On information and belief, Daniel Ross, a citizen of Maryland, is Penn Shop's sole member.  In the alternative, on information and belief, all members of Penn Shop are citizens of Maryland.

## Jurisdiction and Venue

6.      The United States District Court for the District of Maryland has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and because the underlying claimant seeks to recover more than $75,000 from the underlying defendants, which amounts are potentially covered under an insurance policy issued by Starr.  In addition, if the underlying action goes to trial, Starr may spend more than $75,000 defending the underlying action.

7.      Venue is proper in the District of Maryland under 28 U.S.C. § 1391 because at least one defendant resides in this District and because the underlying litigation is taking place in state court in this District.

## Background

8.      Starr Indemnity & Liability Company issued Commercial Automobile Liability Policy No. SISIPCA08364716 to Ross Contracting, Inc. for the Policy Period March 16, 2016 to March 16, 2017 (the "Auto Policy").

9.      Starr Indemnity & Liability Company issued Commercial General Liability Policy No. 1000025488161 to Ross Contracting, Inc. for the Policy Period March 16, 2016 to March 16, 2017 (the "CGL Policy").

10.     Starr Indemnity & Liability Company issued Commercial Excess Liability Policy No. 1000022556 to Ross Contracting, Inc. for the Policy Period March 16, 2016 to March 16, 2017 (the "Excess Policy").

11.     In its application for the Policies, Ross Contracting did not disclose that an ATV course existed on certain land owned by Penn Shop Farms, LLC.

12.     In its application for the Policies, Ross Contracting stated that Penn Shop Farms, LLC "owns land where Ross Contracting stores equipment and building at 12902 Penn Shop Road, Mount Airy, MD 21771."

13.     Because it did not disclose the existence of the ATV course on the land, this statement was materially misleading.

14.     In its application for the Policies, under the "description" of the property at 12902 Penn Shop Road, Mount Airy, MD 21771, Ross Contracting stated that the property was a "Contractor's yard & dwelling leased to others."

15.     Because it did not disclose the existence of the ATV course on the land, this statement was materially misleading.

16.     During the course of underwriting the Policies, Starr specifically requested more information concerning the Penn Shop Farms property.  Ross Contracting, through its broker, orally represented to Starr that the property was used to store equipment.

17.     Because it did not disclose the existence of the ATV course on the land, this statement was materially misleading.

18.     If Starr had known of the existence of the ATV course:

      a.  it would not have issued the Policies for any premium; or

      b.  it would have issued the Policies on different terms and conditions, including excluding injuries sustained on the Penn Shop Farms land; or

      c.  it would have requested additional information concerning the ATV course so that it could quote different and appropriate terms and premiums in connection with the Policies.

19.     Ross Contracting has not paid an actuarially fair premium to purchase insurance coverage in connection with injuries that arise out of the ATV course.

20.     On October 29, 2016, Anthony Martinez sustained serious injuries while riding an ATV at Penn Shop Farms.

21.     By letter to Ross Contracting and Penn Shop Farms dated May 9, 2017, Starr reserved rights under the Policies with respect to potential claims by Mr. Martinez.

22.     On July 24, 2017, Mr. Martinez filed suit in the Circuit Court for Frederick County, Maryland against Daniel Ross, Ross Contracting, Inc., and Penn Shop Farms, LLC in connection with his injuries (Case No. 10-C-17-001862).

23.     Under reservation of rights, Starr has defended and is defending each defendant in Mr. Martinez's suit.

24.     On September 18, 2018, Judge Scott Rolle entered an order granting the defendants summary judgment in the underlying litigation.

25.     In that summary judgment order, Judge Rolle found that the following facts were not disputed in the underlying action:

a. A large number of Mr. Ross's guests were invited to ride dirt bikes and ATVs on courses set up on Penn Shop Farms land.

b. Mr. Martinez was invited to ride Mr. Ross's ATV.

c. The ATV that Mr. Martinez was riding at the time of the accident is a motor-driven vehicle that is designed for or capable of cross-country travel on or directly over land, snow, or other natural terrain, and is not intended for use on public roads.

d. Mr. Martinez and Mr. Ross exchanged text messages before the event discussing Mr. Martinez's anticipated vehicle use during the event.

**The Policies Do Not Provide Coverage**

26.     Starr is entitled to rescind the Policies such that they are void *ab initio* and provide no coverage whatsoever.

27.     Starr hereby offers to return the full premium for all of the Policies to Ross Contracting, Inc. Upon order of the Court, Starr will tender the full premium paid for the Policies to Ross Contracting, to the Court's registry, or as otherwise directed by the Court.

28.     To the extent the Policies are not treated as rescinded, they nonetheless provide no coverage in connection with Mr. Martinez's suit.

29.     The Auto Policy provides coverage only in connection with bodily injury or property damage resulting from the ownership, maintenance, or use of a covered "auto."

30.     The Auto Policy defines "auto," in relevant part, as a vehicle "designed for travel on public roads" or any other "land motor vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged."

31.     A Personal Injury Protection Endorsement to the Auto Policy separately defines "auto" for purposes of PIP coverage to include "an automobile and any other vehicle, including a trailer, operated or designed for operation upon a public road by any power other than animal or muscular power."

32.     The ATV that Mr. Martinez was riding at the time of the underlying accident is not an "auto" under the Auto Policy because it is not an automobile, was not designed for travel or operation on public roads, and was not subject to any compulsory motor vehicle insurance law.

33.     Because Mr. Martinez's injuries did not result from the ownership, maintenance, or use of a covered "auto," the Auto Policy provides no coverage in connection with the underlying litigation.

34.     The CGL Policy excludes from coverage certain claims related to "Mobile Equipment."

35.     The CGL Policy defines "Mobile Equipment," in relevant part, to include "land vehicles" such as "bulldozers, farm machinery, fork lifts, and other vehicles designed for use principally off public roads," land vehicles that are "maintained for use solely on or next to premises you own or rent," and land vehicles not otherwise described in the definition "maintained primarily for purposes other than the transportation of persons or cargo."

36.     The ATV that Mr. Martinez was riding at the time of the underlying accident is "Mobile Equipment" under the CGL Policy because it is a land vehicle designed for use principally off public roads, because, on information and belief, it was maintained for use solely on or next to premises owned or rented by one or more insureds, and because, on information and belief, it was maintained primarily for purposes other than the transportation of persons or cargo.

37.     The CGL Policy excludes coverage for bodily injury and property damage arising out of the use of Mobile Equipment in "any prearranged racing, speed, demolition or stunting activity."

6

38.     The event at which Mr. Martinez sustained injuries was a prearranged racing, speed, or stunting activity.

39.     Accordingly, the CGL Policy excludes all coverage in connection with Mr. Martinez's lawsuit.

40.     The Excess Policy only would provide coverage if the Auto Policy or the CGL Policy provided coverage.  Because coverage is not available under those policies, the Excess Policy also provides no coverage.

41.     Out of an abundance of caution, Starr has defended the underlying suit under reservation of rights.  For avoidance of doubt, by filing this action Starr is not seeking to terminate its participation in the defense before this Court enters a declaration, is not seeking to recoup any defense costs expended to date, and is not seeking any legal ruling regarding whether it had a duty to defend before the court renders a declaration in this action.

## COUNT I:  Declaratory Relief

42.     The Auto Policy provides no coverage in connection with Mr. Martinez's lawsuit because no covered "auto" was in any way involved in the underlying accident.

43.     The CGL Policy provides no coverage in connection with Mr. Martinez's lawsuit because the ATV is "mobile equipment" that was used in a prearranged racing, speed, or stunting activity.

44.     The Excess Policy provides no coverage in connection with Mr. Martinez's lawsuit because neither of the other policies provides any coverage.

45.     Upon entry of a declaration that none of the Policies could possibly provide any coverage, Starr will have no prospective duty to defend.

46.     Starr accordingly requests that the Court:

    a.  Declare that no indemnification coverage is available under the Auto Policy, the CGL Policy, and the Excess Policy in connection with Mr. Martinez's lawsuit;

    b.  Declare that Starr has no duty to defend any further litigation activity in Mr. Martinez's lawsuit; and

    c.  Award any other legal and equitable relief to which Starr may be entitled.

## COUNT II:  Rescission

47.    Ross Contracting misrepresented the risks posed by the Penn Shop Farms land, which contained an undisclosed ATV course.

48.    The misrepresentations regarding the ATV course were material to the risk assumed by Starr.

49.    Starr is willing to return all premiums paid in connection with the Policies to Ross Contracting, Inc., to waive any claim to recoupment of the defense expenses and other costs incurred to date, and to otherwise treat the Policies as void *ab initio*.

50.    Starr accordingly requests that the Court:

    a.  Declare that that the Policies are rescinded and void *ab initio*;

    b.  Enter an order directing Ross Contracting, Inc. or the Court's registry to accept from Starr payment of the premiums received in connection with the Policies;

    c.  Declare that Starr has no further duties under any of the Policies; and

    d.  Award any other legal and equitable relief to which Starr may be entitled.

Dated:  November 19, 2019                Respectfully submitted,

                                                  */s/ Peter Jenkins*                    

                                                  Richard W. Bryan, Esq., Bar No. 2563
rbryan@jackscamp.com
Peter J. Jenkins, Esq., Bar No. 20177
pjenkins@jackscamp.com
JACKSON & CAMPBELL, P.C.
1120 Twentieth Street, N.W., Suite 300
Washington, DC  20036
(202) 457-1600

*Counsel for Starr Indemnity & Liability Company*